May it please the Court, Ronald Chang for the United States, also for the United States, is Eileen Decker, who is trial counsel in the District Court. I'd like to reserve a minute for rebuttal, and I'll try to monitor my time. The government appeals from the District Court's dismissal of the indictment. The District Court had dismissed the indictment because the government had refused to answer the remaining questions that were directed to the government's investigation of Defendant's Counsel. This investigation arose from a scenario in which a defendant had contacted the District Court's investigation of Defendant's Counsel. The District Court had contacted the Co-operators' Counsel, Mr. Stambler, which resulted in a contact from Mr. Stambler to the government. The information that Mr. Stambler provided was that after consulting with Defendant's Counsel, the defendant had called the co-operator and had asked whether the co-operator would be interested in having a bail posted as well as the remaining attorney's fees paid by them. Based upon this information, the government verified the calls and determined that, in fact, Defendant had made calls both to the co-operator and then shortly after the phone call, excuse me, to the Co-operators' Counsel, and shortly after the call to the Co-operators' Counsel, had made a call to his own counsel. Based on that information, as well as information regarding that counsel in a separate section in the office that was investigating counsel, the decision was made to allocate or to designate a separate section in the office that was investigating counsel would handle the litigation of Defendant's Counsel for what might possibly be witness tampering or obstruction. And so, as a result of that decision, the Co-operators' Counsel decided that they would not handle that aspect of the matter. After the trial counsel had been screened off from the further investigation, what I'll call the team investigating Defendant's Counsel had the co-operator contact Defendant Wasserman's lawyer. This is screening off took place. In this record, it's supported by the declaration that was submitted by the government to the district court. The declaration provides that after learning of the phone call, the trial assistant contacted her supervisor, and the decision was made to that any further investigation involving Defendant's Counsel would be allocated to the other prosecutors in the separate unit. That declaration have anything to do with the discovery that was ordered? It does, in a way. We had provided that declaration in camera, and we had actually maintained that that should not be disclosed to the defense. Of course, because of a misunderstanding or a mistake on our side, that has now been provided to the defense. But that does corroborate the position that we took in the answer to the questions that were propounded by the defense, that in fact, Mr. Hirshman, Mr. Arco, and a separate investigator were responsible for the investigation. And that was information that was provided to the defense at the time of the initial hearing. So really, it doesn't depend on the in-camera declaration alone. It also includes the information that had previously been provided. Now, based upon this investigation, the defendant argues one of two things, either that discovery was warranted as an aid to further development of a Sixth Amendment claim, or possibly it is what the district court actually ordered, which was that discovery should be used by a co-defendant in order to contact counsel. Viewed either way, we believe that discovery was inappropriately ordered for what the government had did. And that is primarily because under this Court's case law and the Supreme Court case law, a Sixth Amendment violation has not been demonstrated. So a co-defendant contacted the lawyer. Do I understand it's the co-defendant contacted this defendant's lawyer? That's correct. In order to get information about this, from this defendant's lawyer that might be incriminating in an investigation against this defendant's lawyer? It certainly might have that. Isn't that the purpose of it? That is the purpose. Yes. And wasn't that during the course of the lawyer's investigation, lawyer's representation of this defendant in this proceeding? That's correct, Your Honor. But isn't that an interference with the right to counsel? It is not an interference under the Court's case law, because what the Court is talking about in cases such as, most recently, the Fernandez case, and going back to Omwani and Irwin, an interference with counsel that is directed strictly towards disrupting the relationship. It does not talk about whether or not there is an independent offense that might be under investigation. In Omwani, it appeared to be, at least the defense claim was it was a gratuitous disruption of the attorney-client relationship. In Irwin, it was a disruption of the attorney-client relationship that was designed to seek a resolution of that case. In this particular case, what we're talking about is a preexisting set of facts that emanated directly from the defendant when defendant contacted the cooperator's counsel. Well, what is your closest – what is the authority that draws this kind of distinction that you're making? Because I really find this conduct quite disturbing. Well, I grant you, Your Honor. I'm just speaking for myself, not for the others. Well, before addressing the legal point, I want to recognize that, of course, there are serious issues here. And we recognize that there are risks. And that is why we tried to set up a separate team in order to investigate it. Otherwise, the only alternative – Well, I understand you set up a separate team. But what is the – what is the defendant supposed to know about this and the lawyer at the time that the call is made? Well, I think – I think the difficulty here is really what options are available to the government. And I think taken to its natural conclusion, to take the position that because of the risks, this is something that cannot be engaged in, then the only alternative is not to do anything at all. And in that kind of a situation – I'm sorry. Go ahead. I think in that kind of a situation, there is the potential for other harms to arise, which would be potentially a witness who might be influenced, or other attempts that might be taken to influence a witness. But the government has no way, if this scenario is played out to its proper conclusion, in order to investigate this. Now, the defense has suggested that there might be other things that the government could do. Some of them are perhaps more intrusive than what occurred here. The defense suggests that perhaps there should be a direct contact with Mr. Wasserman. That would directly raise an ex parte contact issue. Another, I think, suggestion was that there should be a search conducted. That has two problems associated. One, of course, is that directly implicates the entirety of what defense counsel does not only in this case but in other cases. But it also would frustrate any possible further investigation, because at that point the investigation would be overt. I would appreciate it at some point before your time is up, you address the sanction issue. I understand that you've got a challenge to the discovery being proper. In other words, your position is there was no prejudice to Wasserman because you had separate teams. And it's a little more complicated than that, but it seems to me it boils down to that. And there is precedent that would say there has to be substantial prejudice. But assuming that we don't accept that, and that we think there is a Sixth Amendment violation, was the sanction of dismissal of the indictment too extreme? We believe so, based upon. And what were the alternatives? There were alternatives that were suggested to the district court, such as suppression directed either to the initial call that was made to Mr. Stambler or suppression of the contact that was subsequently made. These are lesser sanctions that could have been entertained by the court and were presented to the district court, but were rejected. What would have been suppressed? It would have either been the initial contact from Mr. Wasserman directly to Mr. Stambler. And that was potentially something that the government could use in order to impeach or as actually direct evidence of guilt, because if the defense was interested in paying the fees and paying for bail for the cooperator, that would tend to be evidence of guilt at trial. But the court could entertain suppressing either that call or suppressing the subsequent contact to the extent that that was of any evidentiary value. But these were options that were not accepted. There was nothing of value in the three-minute call. There was nothing of value in the call. But I think that really plays back to our earlier point, which was that there really was nothing gained as a result of the investigation. I am sorry, but I find this quite confusing. Was the sanction, the dismissal, I thought that the dismissal was entered because you had an objection to the whole discovery process. That's correct. And that the dismissal was done not because the court necessarily thought that you had to answer those seven questions, but because to get the whole issue of the discovery to the appellate court. So it's not clear to me whether the issue we have to decide is the propriety of the discovery that you want or the propriety of those seven questions, or maybe it's first and then the discovery. I think that's right, Your Honor. I think one does lead to the second. As an initial matter, the court should not have dismissed the action to the extent that there was any Sixth Amendment violation. But more fundamentally. Well, I thought that the government said that's fine. We'll take the dismissal so we can bring the issue up to the appellate court. I thought the government said it wanted a sanction so it could appeal, but that it didn't ask for a sanction of dismissal of the indictment. I think that's right, Your Honor. Alternative sanction. I think that's right, Your Honor. But, you know, our initial position was that it was not appropriate to order that discovery in the first place, much in the same posture as Armstrong, where the court had ordered discovery and the government stated it would not comply. It took the sanction of dismissal and then proceeded to appellate review. But our main point is that the discovery ordered by the district court was in itself a sanction. The court did not say we were ordering the sanction as a measure to develop a further Sixth Amendment claim. It was a sanction in and of itself. I see I've exceeded my time. If there was any time, I would resume. Good morning, and may it please the Court. I'm Elizabeth Newman representing Henry Wasserman. Your Honor, the district court ordered discovery not as some sort of punishment to the government, but because Mr. Wasserman made a threshold showing of entitlement to it. That is, he presented some evidence under Armstrong tending to show the existence of a violation of his rights. And he presented that evidence in the form of the evidence that the government had given to him, which was, as Your Honor has suggested, the very disturbing conduct of using his co-defendant, Mr. Wasserman's co-defendant, to try to set up his lawyer, Mr. Wasserman's lawyer, in the course of an active criminal case. The district court, like Your Honor, could hardly believe, well, was very disturbed and also said that it could hardly believe that the U.S. Attorney's Office had sanctioned that conduct. But the U.S. Attorney's Office had sanctioned that conduct, and the effect was that Mr. Wasserman was deeply concerned about whether he could continue to maintain his confidence in Mr. Richards, and that Mr. Richards was thrust into the role of a witness into the case, because how else was he to cross-examine Ms. Cassidy or cross-examine a case agent or plan his own litigation strategy without alluding to or making himself a witness to this very disturbing conduct on behalf of the government in the context of his own case? So — How would he have been — how would he have made himself a witness? How would he have made himself a witness? You mean procedurally? How would that have worked? Well, the professed concern is that he would not be able to continue as Mr. Wasserman's counsel because he had to be a witness. Yes. I haven't figured out how come he had to be a witness. Well, Your Honor, how could he cross-examine Ms. Cassidy, for example, by saying something like, didn't you call me? Wouldn't — isn't there — is there nothing that you wouldn't do to reduce your own sentence as part of your cooperation agreement? What pressure did they apply to make you call me? Things like that. How can he say that in front of a jury? He can't. He would have been a witness. Your Honor, how — He doesn't have to testify. They've got a tape of the call. Certainly, Your Honor, but the jury has to be very, very confused and consider it quite odd about — to — when it considers how this lawyer came to be at this center, who is supposed to be an advocate on behalf of a client, came to be somehow a part of the investigation. I mean — and how is he to cross-examine a case agent? In the same way, it's very, very troublesome and puts him in a very, very awkward position. Unless defense — criminal defense counsel get out of jail free carries all the time, they can be subject to criminal investigation like anybody else. Certainly, Your Honor. But there are two points here. First of all, in order to make the discovery order proper, all that Mr. Wasserman had to show was a threshold, some evidence tending to show a violation and prejudice. To get some discovery. That doesn't necessarily answer the question when they come to that, whether these questions are all justified by the situation. But I'll accept your basic proposition. And so what I would argue, Your Honor, is that if this evidence isn't some evidence tending to show the existence, then I don't know what a threshold showing, entitling you to discovery would be. To go back to Your Honor's question about — But the government didn't simply refuse to answer the questions. The government, in fact, answered most of the questions. Indeed, the government had put the judge on notice before all this began. So the government was aware that this was an unusual situation. It's not like they acted blindly. No, they didn't act blindly. They acted with full knowledge of the delicate situation that this was. And, I mean, in blunter words — So are they supposed to disregard a ball that started rolling because your client made a phone call that your client's co-defendant's lawyer perceived as a bribe attempt and contacted the U.S. Attorney's Office? Now, how are they supposed to — are they supposed to disregard that because it might somehow separate your client and his lawyer? No, Your Honor. No one is disputing the presumption of regularity that applies to the government's authority to prosecute someone and, as a correlative matter, to investigate someone. A bar card, as you point out, is not a get-out-of-jail-free card. What's disputed here is the propriety of the government's methods. And there's no presumption of regularity that applies to investigative methods. There are lots of things that the government could have done that would never have inserted itself into what the Fourth Circuit calls this sacred relationship between the attorney and his client. There are lots of things it could have done, as the Stauber case also is sort of indicative to show, where the court in that case rejected the government's sort of blanket assertion and blanket rejection of anything else and said that there were lots of ways that the government could have investigated that lawyer's case without inducing the lawyer to try to entrap the client on her own with the government's help. So it's – there's no presumption of regularity that applies to the government's investigative methodology. And so – We're all talking theory here, right? The practical reality was that it was your client that made a phone call in which your client made specific reference to calling with the authorization of his lawyer that raised concern about this lawyer in a context where the U.S. Attorney's Office had other reasons independent of your client to be concerned about this lawyer. Now, to pursue that, it seems to me that your client's case kind of screams out for attention. It was your client that made that phone call. What else are they supposed to do? Well, Your Honor, they might have interviewed Mr. Richards. I mean, they might have interviewed this lawyer. We never suggested, incidentally, as the government I think mistakenly said, that the government make some sort of ex parte contact with Mr. Wasserman, only with Mr. Richards. They might have set up some sort of decoy operation. Now, I'm not saying that wouldn't have been more cumbersome or maybe more expensive, but it would also have obviated the very intrusive nature of the methodology that they did adopt. Okay. Let's talk about the sanction, at least for part of your argument, because I think there's a case on each side of whether the discovery order was proper. But at least the district judge didn't think it was proper. And let's assume that this panel thinks the discovery was an interference with a Sixth Amendment right. Still, the sanction of dismissing a 51-count indictment seems bizarre to me, frankly. I mean, that's like punishing the public for a wrong of the U.S. attorney, if it is wrong. And this is a very serious indictment. It involves repeated criminal offenses of a serious nature that hurt a lot of people. Is that the only sanction? Assuming that the discovery order was wrongful and the government stopping at 19 answers was beyond the pale and they should have answered the other seven. You know, if that's true, was dismissing the indictment the only sanction that the court could do? I didn't see anything in the court's order indicating the court had seriously addressed other sanctions. Your Honor, to answer your last comment first, the court did say in its written order denying reconsideration that it had considered other remedies, such as suppression. And it said that those remedies weren't good enough here. Now, the court might have expanded. I thought the court just made a conclusory statement. It didn't show any real analysis of alternatives. Well, I think. Am I missing something there? No, your Honor. The court's order was very brief. But. So then it doesn't mean anything to us. Well. It means something. But it doesn't give reasons. Well. You know, like, why couldn't a government lawyer be fined or disbarred if they did something wrong? Or, you know, why couldn't it be exclusion of evidence? Why does someone indicted for 51 counts of mail fraud and wire fraud, why do they just get a total pass? Well. Without analysis. There are two reasons, your Honor, why dismissal was appropriate. And one is, I think the most important is, that the government itself gave the court no basis on which to make any other remedy appropriate. What I. The government argued on the record that there could be exclusion of evidence. Yes, your Honor.  Yes, your Honor. They made that argument. But what evidence is to be excluded here? It's hard to see what evidence ought to be excluded because the government never really made a showing about exactly what evidence it was withholding. Could the government's lawyers be fined? I suppose so. Could they lose their ability to practice in the court? Well, I suppose there are remedies. Why doesn't the judge consider, if what we're talking about here is a judge perception of attorney misconduct by the U.S. attorney, then why isn't he assessing remedies that go to that, as opposed to dismissal of the indictment? Your Honor, certainly the district court could have referred this matter subsidiarily to the Office of Professional Responsibility, for example. But dismissal was appropriate for this reason, and that is that because there's no way to tell what kind of taint the withheld material might have caused to the defense case, because the government never properly really asserted a privilege and never really said what kinds of materials were at issue or how they might affect anything, the district court really didn't have a choice about what sanction to apply. And the second answer to the court's question. Was there a hearing on that? On whether the ---- No sanctions? Well, in a sense, Your Honor ---- No evidentiary hearing. No, there was no evidentiary hearing. There was a hearing on the government's announcement that it was not going to comply. There were objections based on deliberative privilege. I'm sorry, Your Honor? They objected to answering seven questions out of the 26 on grounds of deliberative privilege. Well, eventually, Your Honor. They certainly didn't do it in the course of ---- Okay. In their opposition to the discovery motion or in their discussion during the hearing on the discovery motion, but only afterwards. Okay. Okay. Are there any further questions of counsel? Thank you, Your Honor. The case just argued is submitted for decision. We'll hear the next case, which is United States v. Boxenbaum. Could you move these two notes over to the side? No, no. This is good. Yeah, I'm done with this. I'm just going to go over here.
judges: Schroeder, Gould, Clifton